UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AECON BUILDINGS, INC., | Case No. C07-832MJP |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS |
| v. | |
| ZURICH NORTH AMERICA, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion for discovery sanctions against Defendant Zurich.[1] (Dkt. No. 124.) Zurich opposes the motion. (Dkt. No. 152.) Having considered the motion and response, Plaintiff's reply (Dkt. No. 158), all documents submitted in support and the balance of the record, and having heard oral argument on the matter, the Court GRANTS Plaintiff's motion for discovery sanctions and imposes fees in an amount equal to that billed by litigation counsel between the filing of initial disclosures and May 23, 2008.

**Background**

Many of the facts related to this motion were recently discussed in the Court's order granting Plaintiff's motions for bad faith against Defendants. In brief, this insurance coverage action arises from claims made by the Quinault Indian Nation ("the Quinault") against Aecon Buildings, Inc. ("Aecon") regarding the construction of a casino and hotel project in Ocean

---

[1] The Court refers to all of the Zurich defendants — American Zurich Ins. Co. (referred to in the complaint as Zurich North America), Zurich American Ins. Co., Northern Ins. Co. of New York, and Valiant Ins. Co — collectively as "Zurich."

ORDER — 1

Shores, Washington. Aecon was the general contractor for the project. Chinook Builders, Inc. ("Chinook") and Western Partitions, Inc. ("Western Partitions") were two of the subcontractors Aecon hired to work on the project. Construction commenced in May 1998 and was substantially completed on June 9, 2000. (Dkt. No. 134, Blood Decl., Ex. 1 at ZC 000665.) In April 2004, the Quinault contacted Aecon alleging defects in the project. When it became apparent that Aecon might be held responsible for defects in the work performed by a number of its subcontractors, Aecon sued the subcontractors in state court and tendered claims for defense and indemnity to them and their insurers. Both of the subcontractors involved in this litigation had entered into subcontract agreements with Aecon in which they agreed to defend and indemnify Aecon for claims arising out of their work and in which they agreed to list Aecon as an "additional insured" under their respective liability policies. (See Dkt. No. 110-5, Blood Decl., Ex. 1 at AEC 081767, 081769; Dkt. No. 105-4 at AEC 9229, 9231.) The insurers — Hartford Casualty Insurance Company ("Hartford") for Chinook and Zurich for Western Partitions — both refused to defend or indemnify Aecon. Zurich did, however, defend Western Partitions against Aecon's third-party claims in the state court case under a reservation of rights and then settled Aecon's claims against Western Partitions in the underlying suit. Aecon partially settled the Quinault's claims in early June 2006 for approximately $1.9 million and fully and finally resolved the dispute on January 31, 2007, for $3.75 million after a final mediation proceeding. (Dkt. No. 105-10, 105-14.) Aecon initiated this suit against Hartford and Zurich in April 2007, claiming that Defendants breached their duty to defend and indemnify Aecon, breached their duty to act in good faith, and acted negligently. (Dkt. No. 3, Compl. at 25-26.) Aecon seeks declaratory relief and damages. (Dkt. No. 24, First Am. Compl. at 8-9.)

The immediate matter relates to Aecon's tender to Zurich and Zurich's and its counsel's conduct. On May 3, 2006, Aecon tendered the Quinault's claims against Aecon to Western Partitions and Zurich. (Dkt. No. 105-5.) Zurich set up a claim file and assigned claim number 9260036391 to Aecon's tender. On June 28, Caryn Kreman, a Zurich claims handler, sent a

ORDER — 2

letter denying Aecon's tender. Her denial letter stated:

> We do not have a copy of the subcontract agreement. However if there is a written subcontract agreement requiring Western Partitions, Inc. to name Aecon Building Inc., a/k/a/ BFC Frontier, Inc. as an insured under the policies, they would be an insured under the policy until work has been completed or put to its intended use. It is our understanding this project has be[en] completed and/or put to its intended use. It is further our understanding that this loss arises out of construction defects and resulting damage that took place following completion of the project. Therefore we must respectfully deny the tender of defense of Aecon Building Inc. a/k/a/ BFC Frontier, Inc.

(Dkt. No. 134, Blood Decl., Ex. 1at ZC 000022.) Ms. Kreman's claims notes indicate that she closed the file that same day.[2] (Id. at ZC 000002.)

About a year after Ms. Kreman denied Aecon's tender, starting in May 2007, another claims adjuster, Loralee Thatcher, reexamined the claim. It is unclear whether any attorney instructed Ms. Thatcher to work on the claim. Indeed, at oral argument, Zurich's counsel admitted that he did "not know who instructed her to make the additional insured determination." (Aug. 5, 2008 Oral Argument.) Ms. Thatcher gathered documents in her investigation of the claim and she made notes in the same electronic file in which Ms. Kreman had worked. She determined that Aecon was potentially covered as an additional insured under the Western Partitions' policy. (Dkt. No. 124, Blood Decl., Ex. 13 at 52, 57-58; Ex. 14 at ZC 000916.) She believed that her determination was "opposite" of what Ms. Kreman had decided. (Id., Ex. 13 at 67.) Her July 17, 2007 claims notes indicate: "Now have copies of contract, AIE and allegations of defective work on insured's part. Unclear what, if any resultant damage, but sufficient to trigger AI coverage." (Id., Ex. 14 at ZC 000916.) She explained that her determination meant that if the policy covered Western Partitions, Aecon was also covered. (Id., Ex. 13 at 58.) Although it would have been typical of her to do so, Ms. Kreman did not issue a reservation of rights letter informing Aecon of her determination; someone from Zurich's legal

---

[2] The "claims notes" electronically document work that an adjuster (or other employee) does on a particular claim number.

ORDER — 3

department told her not to do so because the matter was in litigation.[3] (Id. at 18-20, 55-56.) And although it would have been typical for her to do so, she was instructed not to determine whether Zurich had a duty to defend or indemnify Aecon. She was instructed to cease work on the claim. (Id. at 84.) It is undisputed that no one from Zurich informed Aecon directly or through counsel of Ms. Thatcher's work on the claim or her final determination. Ms. Thatcher testified in deposition that she produced a copy of her file to Zurich's litigation counsel at the law firm of Soha & Lang. (Id. at 33.)

Discovery in this matter was scheduled to close on June 2, 2008. (Dkt. No. 14.) On September 4, 2007, Zurich filed initial disclosures listing among the potential individuals who may have discoverable information: "Present and former employees of the Zurich Defendants." (Dkt. No. 124, Blood Decl., Ex. 1 at 7.) Zurich did not identify Ms. Thatcher by name in its initial disclosures and never supplemented that disclosure to reveal her name. On November 20, 2007, Aecon propounded Requests for Production in which it requested production of "a true, correct and complete copy of the entire (a) underwriting and (b) claims files for the Policies [issued to Western Partitions from 1998-2001] including, but no[t] limited to, all electronic communications and data contained therein or pertaining thereto and all paper or document files." (Id., Ex. 2 at 7.) Aecon also requested production of a copy of "each and every document that was reviewed, referenced or relied upon in connection with [Zurich's] decision to approve or deny benefits to Aecon under the Policies." (Id.) In response, Zurich produced the "claim file (ZC 000001-882)," which did not include any materials reflecting that anyone had worked on the file after Ms. Kreman closed it on June 28, 2006. (Id., Ex. 3; Blood Decl. ¶ 20.) In particular, the claims notes produced by Zurich did not reflect Ms. Thatcher's work on the claim. (Id., Ex. 7

---

[3] During her deposition on May 20, 2008, Ms. Thatcher was instructed by Zurich counsel not to reveal the substance of her conversation with Zurich's in-house lawyers or those lawyers' identities. (Id., Ex. 14 at 74-75.) When asked at oral argument why the identities of the lawyers providing advice are privileged, counsel had no response except to withdraw the objection. (Aug. 5, 2008 Oral Argument).

ORDER — 4

(ZC 000002-4.)

In February 2008, Zurich produced a privilege log for the documents previously produced. (Id., Ex. 4.) The log did not identify any materials created or used by Ms. Thatcher. (Id.) On March 3, 2008, in a second Request for Production, Aecon requested "your Electronic Claim File ("ECF"), including documented changes, for the Aecon claim" and "your paper and electronic memoranda and correspondence regarding the Aecon claim." (Id., Ex. 5 at 11-12.) In response, Zurich pointed to the claim file documents already produced — "ZC 000001-882" — and produced an "Abbreviated Case Summary Report – Construction Defect," which it numbered ZC 000883-88. (Id.) The "Abbreviated Case Summary Report" did not document Ms. Thatcher's work on the file. (See id. at ZC 000883.) In an April 14, 2008, brief filed with the Court (responding to Plaintiff's motion to compel production of the separate Western Partition's claims file), Zurich wrote: "The Zurich Defendants have already produced the claim file for Aecon's tender as an additional insured under Western Partitions' policies." (Dkt. No. 59 at 3.) On May 1, 2008, Zurich produced a revised privilege log that again failed to indicate that it was withholding documents related to Ms. Thatcher's work on the file. (Id., Ex. 6.) And in a May 2, 2008 deposition, Caryn Kreman, the original adjuster and Zurich's Fed. R. Civ. P. 30(b)(6) designee relating to the claims file, testified that she believed that she had been the only claims handler to work on Aecon's tender and that it was her understanding that the complete claims file, including a complete set of claims notes, had been produced to Aecon. (Dkt. No. 124, Blood Decl., Ex. 11 at 71-72, 119-120, 252; Ex. 12.) Her supervisor, Eric Brunner, also testified in late April 2008 in deposition that he had "no information as to whether Loralee Thatcher ever worked on Aecon's claim either prior to the actual denial or after." (Id., Ex. 10 at 10, 40.)

In February 2008, Aecon noted Ms. Thatcher's deposition, not because it thought she had handled the claim, but "because she had signed two declarations for her employer in this action, authenticating numerous Zurich documents." (Id., Ex. 8; McGillis Decl. ¶ 2.) On March 10, in a letter responding to Aecon's letter regarding depositions, Zurich mentioned for the first time that

ORDER — 5

Ms. Thatcher was involved in handling Aecon's claim: "The persons who were actually involved in the claim were Loralee Thatcher and Caryn Kreman, and possibly Eric Brunner." (Dkt. No. 124, Blood Decl., Ex. 9.) Zurich's litigation counsel, Gary Sparling from the Soha & Lang law firm, reports that around that same time he informed Aecon's counsel that Ms. Thatcher "had been assigned to the Aecon file after this lawsuit was filed, that she had been communicating with our firm regarding this suit, and that most or all of her knowledge would be subject to the attorney-client privilege and work-product doctrine." (Dkt. No. 153, Sparling Decl. ¶ 4.) After Ms. Thatcher's deposition, where she revealed that she had indeed worked on and made a determination regarding the file, and after the parties met and conferred on the matter,[4] on May 23, just days before the close of discovery, Zurich produced the "relevant, non-privileged portions of Loralee Thatcher's file in this matter."[5] (Dkt. No. 124, Blood Decl., Ex. 14.) Zurich produced additional claims notes for "Claim 926003691," the same claim number that Ms. Kreman had worked on, and the same claim number for which Zurich had previously produced claim notes, but which had not been included in the earlier production. (Id.) Zurich also produced for the first time a privilege log for that portion of the claim file attributable to Ms. Thatcher. (Id., Ex. 17.) In that privilege log, Zurich indicates that it is withholding about twenty pages of documents on the basis of attorney-client or work-product privilege. (Id.) Apparently, Zurich continues to withhold those documents.

---

[4] Zurich makes the unsupported assertion that the parties never met and conferred. (Def.'s Resp. at 2.) Zurich submits no evidence in support of that assertion. Aecon offers the declaration of its attorney, Tim Blood, who states that immediately after Ms. Thatcher's deposition, he conferred in person with Zurich's counsel, Gary Sparling, in an effort to immediately obtain the claims file material referenced by Ms. Thatcher in her deposition. (Blood Decl. ¶ 21.) Given the evidence presented, the Court concludes that the parties conferred.

[5] Although Zurich counsel repeatedly refers to "Loralee Thatcher's file," it is undisputed that her "file" was the exact same file that Ms. Kreman had worked on, that is, Aecon's tender to Zurich, the 9260036391 file.

ORDER — 6

**Discussion**

Zurich's failure to include in its responses to requests for production any documentation of Ms. Thatcher's work on the claim file, and its failure to produce, until the eleventh hour, a privilege log documenting those portions of the claim file attributable to her that it withheld on the basis of privilege, are clear violations of the discovery rules. See Fed. R. Civ. P. 26(e)(1) (requiring parties to supplement or correct responses to requests for production) & 26(b)(5) (requiring production of privilege log when information otherwise discoverable is withheld). Without citing any legal authority, Zurich argues that it was under no obligation to produce the documents in "Ms. Thatcher's file" or to produce a privilege log because the documents are protected by work-product and attorney-client privilege. (Def.'s Resp. at 4.)

A party withholding materials under an assertion of privilege has the burden of proving that the withheld materials are actually privileged. See Heath v. F/V Zolotoi, 221 F.R.D. 545, 549 (W.D. Wash. 2004). Work-product protection applies to "documents and tangible things prepared in anticipation of litigation or for trial" by or on behalf of a party. Fed. R. Civ. P. 26(b)(3). Documents prepared in the ordinary course of business are not protected. Fed. R. Civ. P. 26(b)(3), 1970 Advisory Committee Notes. Attorney-client privilege protects confidential communications between attorneys and clients. The "essence of the attorney/client relationship is whether the attorney's advice or assistance is sought and received on legal matters." Bohn v. Cody, 119 Wn.2d 357, 363 (1992).

Zurich has failed to satisfy its burden of showing that the originally withheld materials are privileged. The facts it cites in support of its assertion of attorney-client or work product privilege are (a) the timing of Ms. Thatcher's work — she reassessed the tender after Aecon filed this lawsuit, (b) the fact that she obtained the subcontract agreement from Zurich's litigation counsel, Soha & Lang, and (c) the fact that Ms. Thatcher discussed the claim with Zurich's in-house and litigation counsel. The only conversations or interactions with counsel that Ms. Thatcher referred to in her deposition were the following: (1) she obtained materials missing

from the file from Soha & Lang (Dkt. No. 124, Blood Decl., Ex. 13 at 16); (2) in-house counsel instructed her not to inform Aecon of her final determination and to cease work on the claim (id., at 19-20); and (3) she provided Soha & Lang with copies of her file. Ms. Thatcher did not rely on counsel before making her determination. (Id. at 22.) Zurich offers no other declarations or exhibits supporting its assertion of privilege.

These facts do not prove that Ms. Thatcher's additions to the claims file are privileged as work-product. Contrary to Defendant's suggestion otherwise, Zurich has failed to show that Ms. Thatcher was "assigned to [work on] the file specifically in response to this lawsuit." (Def.'s Resp. at 2.) She testified to just the opposite — Ms. Thatcher testified that she believed Aecon had "re-tendered" its claim and that she received the assignment through the normal assignment queue. (Dkt. No. 124, Blood Decl., Ex. 13 at 18, 66.) Zurich has also failed to offer evidence identifying any lawyer who (a) assigned the matter to Ms. Thatcher, (b) communicated with her regarding the substance of the claim, or (c) instructed her to cease working on the claim.[6] Zurich cannot cloak Ms. Thatcher's work under work-product privilege just because she happened to work on the claim at the same time this litigation was progressing. See HSS Enters., LLC v. Amco Ins. Co., Case No. C06-1485-JPD, 2008 U.S. Dist. LEXIS 11841, at *13 (W.D. Wash. Jan. 14, 2008) (explaining that because insurance companies have a duty to investigate, evaluate, and adjust claims made by their insureds, "the creation of documents during this process is part of the ordinary course of business of insurance companies, and the fact that litigation is pending or may eventually ensue does not cloak such documents with work-product protection"). Nor has Zurich shown that any of the at-issue materials are protected by attorney-client privilege.[7]

---

[6] As previously mentioned, at oral argument, Mr. Sparling could not identify who assigned Ms. Thatcher to work on the file. He "believed" that he and another in-house attorney instructed her to cease work on it.

[7] And even if some of the materials should be protected as attorney-client communications, for at least three of the documents noted in the late-produced privilege log, Zurich

ORDER — 8

Even if it could withhold production of some of the materials under one of the privileges, Zurich was undeniably obligated to produce a privilege log documenting its assertion of the privilege:

> When a party withholds information otherwise discoverable by claiming that the information otherwise discoverable is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Thus, if it withholds requested materials on the basis of privilege, a party is obligated to document those materials in a privilege log to give the requesting party an opportunity to assess the privilege asserted. Zurich did not do that here. Indeed, at oral argument, Zurich's counsel <u>conceded</u> that a privilege log should have been produced.

Zurich's actions (or those of its litigation counsel) also violate the spirit of the discovery rules: until March 2008 — <u>after Aecon noted Ms. Thatcher's deposition</u> — Zurich represented to Aecon and to this Court that it had produced the entire claims file regarding Aecon's tender to Zurich. Zurich's initial disclosures did not document Ms. Thatcher's involvement in or handling of the claim (Dkt. No. 124, Blood Decl, Ex. 1), its 30(b)(6) witness represented that the entire claims file had been produced and that she was the only adjuster to work on the claim (<u>id.</u>, Ex. 11 at 72, 119-20), and in a brief filed with this Court, Zurich implied that it had already produced the entire claims file (Dkt. No. 59 at 3). Zurich thus concealed Ms. Thatcher's involvement in the claims handling process for as long as it could, that is, until Aecon fortuitously noted her deposition. This flagrant violation of both the letter and the spirit of the discovery rules will not be tolerated.

Federal Rule of Civil Procedure 37(c) authorizes the Court to impose sanctions for (a) a party's failure to identify witnesses in its initial or supplemental disclosures or (b) a party's failure to supplement or correct responses to interrogatories or requests for production. Fed. R.

---

only asserts work-product privilege. (<u>Id.</u>, Ex. 14.)

Civ. P. 37(c); Fed. R. Civ. P. 26(a) & (e).  The rule provides:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>> (B) may inform the jury of the party's failure; and
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c).

Aecon originally requested that the Court enter default judgment against Zurich as a sanction for its discovery abuses. See Fed. R. Civ. P. 37(b)(2)(A)(vi).  In light of the Court's order granting Aecon's motion for summary judgment on its bad faith claim against Zurich, Aecon requested at oral argument that the Court instead award fifty percent of the amount Aecon intends to seek at trial from Defendants — about $2 million.

Zurich argues that any discovery violations on its part were either substantial justified or harmless.  Zurich argues that its non-disclosure was "substantially justified" because the withheld documents were privileged.  As discussed above, Zurich has not carried its burden of showing privilege, and even if it could, it was still obligated to produce a privilege log.  Its violations of the discovery rules are not justified.  Nor are they harmless.  Zurich argues that Ms. Thatcher's determination was consistent with Ms. Kreman's because Ms. Kreman assumed that Aecon was an additional insured and Ms. Thatcher confirmed that fact.  Regardless of whether the determinations were consistent, however, Aecon had an interest in investigating Zurich's conduct in handling its claim.  This is a bad faith action and, as Aecon points out, Ms. Thatcher's work is highly probative of Aecon's assertion that Zurich conducted a bad faith investigation of its tendered claims.  Aecon's ability to investigate Zurich's handling was severely limited by the fact that Zurich failed to reveal Ms. Thatcher's involvement in the handling until the end of the

discovery period.[8] Moreover, although many of the documents in Ms. Thatcher's portion of the file were the same documents that Ms. Kreman looked at, Zurich did not produce, until the close of discovery, Ms. Thatcher's claims notes. Aecon thus did not know of her determination — that the allegations were "sufficient to trigger AI coverage" — until the end of the discovery period. Finally, Zurich continues to withhold documents related to Ms. Thatcher's handling of the claim. Thus, Zurich's violations are not "harmless."

The type of information that Zurich has withheld is the type of basic discovery that a lawyer practicing under the federal rules should know he or she is obligated to turn over — both as part of initial disclosures and in response to discovery requests. The length of time between Ms. Thatcher's involvement in the file and Zurich's production of her portion of the claims file, the number of opportunities for disclosure, and the simplicity of the rules as applied here all lead the Court to believe that counsel's failure to disclose Ms. Thatcher's involvement was not a mere oversight. Lawyers may not profit by violating the procedural rules, hiding materials from party opponents, misrepresenting their disclosures to the Court, or ignoring the requirements of a proper discovery log.

Sanctions are therefore clearly warranted. But the Court has already imposed the sanction of coverage by estoppel for Zurich's bad faith claims handling. And the Court will not impose the sanction requested by counsel at oral argument — that amount is not sufficiently tied to the violation here. Instead, the Court crafts its own sanction, as it is authorized to do under Rule 37(c)(1)(C), and imposes a sanction equal to the amount that Zurich has been billed by its litigation counsel for representation in this action between the date Zurich filed its initial

---

[8] Zurich suggests that it disclosed Ms. Thatcher's involvement earlier. Although counsel made some offhand remarks about Ms. Thatcher's involvement after Aecon noted her deposition, Zurich never produced her claims notes or her portion of the claims file until after her deposition, just a few days before the close of discovery. Thus, until late May, Aecon had no documentation of her involvement, and in fact, had been informed by Zurich's 30(b)(6) witness that only Ms. Kreman worked on the claim. The offhand remarks regarding her involvement, in light of the surrounding circumstances, do not constitute compliance with the discovery rules.

ORDER — 11

disclosures on September 7, 2007, and the date Zurich finally produced Ms. Thatcher's portion of the claims file, May 23, 2008. The Court concludes that a sanction of an amount equal to the amount the law firm billed its client during this time period is reasonably proportionate to the offending conduct here.

**Conclusion**

Zurich's violations of the applicable discovery rules will not be tolerated. The Court imposes a monetary sanction of an amount equal to the amount that Zurich's litigation counsel has billed Zurich for its work during the discovery period. To calculate the amount owed, Zurich is ordered to produce all bills covering Soha & Lang's work on this matter from September 4, 2007 through May 23, 2008. Within thirty (30) days of this order, the funds shall be deposited with the Clerk of the Court, who will be directed to place them in a blocked, interest bearing account. The Court will determine to what use the funds will be put at the end of the litigation.

The clerk is directed to send a copy of this order to all counsel of record.

Date: August 15th, 2008.

/s/ Marsha J. Pechman

Marsha J. Pechman
United States District Judge