1

2

3                    UNITED STATES DISTRICT COURT

4                  WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
5

6    AECON BUILDINGS, INC.,                      Case No. C07-832MJP

7                      Plaintiff,                ORDER DENYING
                                                 HARTFORD'S MOTION TO
8        v.                                      ESTOP AECON RE:
                                                 ALLOCATION OF DAMAGES
9    ZURICH NORTH AMERICA, et al.,

10                     Defendants.

11

12          This matter comes before the Court on Defendant Hartford Casualty Insurance

13   Company's ("Hartford's") motion for an order applying the doctrine of judicial estoppel. (Dkt.

14   No. 129.)  Defendant requests that the Court restrict Plaintiff from claiming damages greater

15   than those presented to this Court and the King County Superior Court in a declaration by

16   Plaintiff's repair costs expert, Rocco Romero.  Plaintiff opposes the motion. (Dkt. No. 164.)

17   Having considered the motion and response, Defendant's reply (Dkt. No. 172), the documents

18   submitted in support and the balance of the record, the Court DENIES Defendant's motion.

19                                    **Background**

20          The parties and the Court are familiar with the facts in this case and the Court need not

21   repeat many of them here.  In brief, this action arises from claims made by the Quinault Indian

22   Nation ("the Quinault") against Aecon Buildings, Inc. ("Aecon") regarding the construction of a

23   casino and hotel project in Ocean Shores, Washington.  Aecon was the general contractor for the

24   project.  Chinook Builders, Inc. ("Chinook") was one of the subcontractors Aecon hired to work

25   on the project.  Construction commenced in May 1998 and was substantially completed on June

26   9, 2000. (Dkt. No. 134, Blood Decl., Ex. 1 at ZC 000665.)  In April 2004, the Quinault contacted

27

     ORDER — 1

Aecon alleging defects in the building structure that is part of the Quinault project.  In May

2005, Aecon sued the subcontractors in King County Superior Court. See Aecon v. Vandermolen

Const., Cause No. 05-2-03044-5 SEA.  Aecon did not initially sue Chinook, but amended its

complaint on June 7, 2006, to include claims against Chinook. (Dkt. No. 92, Ex. 6.)  In May

2006, Aecon also tendered the Quinault's claims to Chinook and its insurer, Hartford, who had

added Aecon as "Additional Insured" under its policy.  Hartford refused to defend or cover

Aecon.  Aecon partially settled the Quinault's claims in early June 2006 for approximately $1.9

million and fully and finally resolved the dispute on January 31, 2007, for $3.75 million after a

final mediation proceeding. (Dkt. No. 105-10, 105-14.)  Aecon initiated this suit in April 2007,

claiming that Hartford breached its duty to defend and indemnify Aecon, breached its duty to act

in good faith, violated the Washington Consumer Protection Act, and acted negligently.[1] (Dkt.

No. 3, Compl. at 25-26.)

In September 2006, the superior court entered default against Chinook as to all claims

and damages specified in Aecon's complaint against Chinook. (Dkt. No. 164, Martens Decl., Ex.

1.)  In March 2007, the superior court ruled on a summary judgment motion brought by the

defendants that Aecon must "(1) provide an expert declaration with an allocation of damages to

each defendant on or before March 22, 2007, to be followed by (2) a 30(b)(6) deposition

regarding Plaintiff's Allocation of Damages on March 23, 2007, and (3) defendants may

continue discovery on damages until the time of trial." (Id., Ex. 2.)  Aecon then asked its expert,

Rocco Romero, to produce an allocation for the remaining parties in the litigation excluding any

parties that were in default or with whom Aecon had previously settled. (Martens Decl. ¶ 2;

Romero Decl. ¶ 4.)  Because Chinook was in default, Aecon did not ask Mr. Romero to prepare

an allocation that included damages attributable to Chinook. (Martens Decl. ¶ 2; Romero Decl. ¶

4.)  On March 21, 2007, Mr. Romero presented a report to the superior court that made the

following allocations:

---

[1]     Aecon also sued another subcontractor's insurer in this action.

ORDER — 2

| | | |
|---|---|---|
| • | Britco: | 70.52% |
| • | Aecon | 12.01% |
| • | Western Partitions | 10.20% |
| • | Vandermolen | 6.10% |
| • | CPC/Lupo | 1.06% |

(Romero Decl., Ex. B.)  Thus, Mr. Romero allocated 99.89% of the loss to the remaining parties in the case, who did not include Chinook.

In September 2007, Aecon moved in the superior court for a determination of the reasonableness of its settlement with the Quinault.  Aecon included Mr. Romero's report with the documents supporting its motion. (See Dkt. Nos. 43-1, 43-5.)  The court denied the motion on procedural grounds, ruling that "the court does not have authority under RCW 4.22.060 to determine the reasonableness of the settlement between Quinault and Aecon because that proceeding was never before this court." (Dkt. No. 43-8.)  The superior court denied Aecon's motion for reconsideration on the issue. (Dkt. No. 43-12.)

In February 2008, Aecon moved for default judgment in the underlying action against Chinook for over $1.3 million in damages plus fees and costs.  In an order dated March 4, 2008, the superior court denied the motion, finding that "damages have not been allocated to Chinook's breach of contract.  Attorney fees and costs have not been allocated to those attributable to Chinook's breach of contract or indemnity obligation." (Dkt. No. 164-2, Martens Decl., Ex. 1.)  In response, Aecon had its expert, James Paustian, prepare an allocation. (Id., Ex. 3.)  In his report, Mr. Paustian estimates the cost to repair the deficiencies and damage related to Chinook's work at $1,185,212. (Id.)  Aecon also submitted an allocation of its attorneys' fees and costs based upon the contractual indemnity provisions of its subcontract agreement with Chinook and the proportional liability of Chinook. (Id.)  Hartford has informed this Court that, as of July 17, 2008, the superior court had not yet ruled on the motion for entry of default judgment, but had requested that Chinook respond to Aecon's computation. (Reply at 2.)

Also in March 2008, Aecon filed a motion in this action requesting that the Court determine the reasonableness of the Quinault-Aecon settlement. (Dkt. No. 42.)  Included with

ORDER — 3

1  the materials filed were the materials Aecon had filed in support of its motion for a

2  reasonableness determination in superior court.  Thus, Aecon included, among the hundreds of

3  pages of materials it filed on this issue, the report prepared by Mr. Romero. (Dkt. No. 43-5 at

4  93.)  On April 29, the Court denied the motion, concluding that, in light of the superior court's

5  ruling on the matter, collateral estopped precluded the Court from making a reasonableness

6  determination of the Quinault-Aecon settlement. (Dkt. No. 70.)  The Court did not consider

7  whether the settlement is actually reasonable or not.

8       Hartford now moves for an order applying the doctrine of judicial estoppel to restrict

9  Aecon's claimed allocation of damages to that presented by Mr. Romero.  That is, Hartford asks

10  this Court to prohibit Aecon from allocating any damages to Chinook.

11                                    **Discussion**

12       The Washington Supreme Court recently described the doctrine of judicial estoppel and

13  the elements to be considered in determining whether it should be applied:

14       Judicial estoppel is an equitable doctrine that precludes a party from asserting one
         position in a court proceeding and later seeking an advantage by taking a clearly
15       inconsistent position. The doctrine seeks to preserve respect for judicial proceedings,
         and to avoid inconsistency, duplicity, and ... waste of time. . . .

16
         Three core factors guide a trial court's determination of whether to apply the judicial
17       estoppel doctrine: (1) whether a party's later position is clearly inconsistent with its
         earlier position; (2) whether judicial acceptance of an inconsistent position in a later
18       proceeding would create the perception that either the first or the second court was
         misled; and (3) whether the party seeking to assert an inconsistent position would
19       derive an unfair advantage or impose an unfair detriment on the opposing party if not
         estopped. These factors are not an exhaustive formula and additional considerations
20       may guide a court's decision. Application of the doctrine may be inappropriate when
         a party's prior position was based on inadvertence or mistake.

21

22  Arkinson v. Ethan Allen, Inc., 160 Wn.2d 535, 538-39 (2007) (internal citations and quotation

23  marks omitted).  Other factors to consider include the following:

24       (1) [t]he inconsistent position first asserted must have been successfully maintained;
         (2) a judgment must have been rendered; (3) the positions must be clearly
25       inconsistent; (4) the parties and questions must be the same; (5) the party claiming
         estoppel must have been misled and have changed his position; (6) it must appear
26       unjust to one party to permit the other to change.

27

ORDER — 4

1   Markley v. Markley, 31 Wash.2d 605, 614-15 (1948), cited with approval in Arkinson, 160

2   Wn.2d at 539.

3         Considering all of these factors here, the Court concludes that application of the doctrine

4   of judicial estoppel would be inappropriate.  First, Aecon's presentation here of Mr. Paustian's

5   report calculating damages attributable to Chinook is not "clearly inconsistent" with its

6   presentation of Mr. Romero's report allocating damages among the underlying case's litigating

7   defendants.  The two reports respond to different questions — one addresses the percentage

8   allocation of damages among a certain subset of defendants (that did not include Chinook) and

9   the other calculates a dollar amount of damages attributable only to Chinook.  Second,

10  acceptance of Mr. Paustian's testimony in this case will not create the perception that this Court

11  or the superior court has been misled.  Not only have the two courts not issued any opinions

12  actually relying on Mr. Romero's report, it is apparent that Mr. Romero's report does not address

13  at all whether any damages should be attributable to Chinook.  Third, there is no injustice in

14  allowing Aecon to present its damages claim through the testimony of Mr. Paustian.  Neither

15  Chinook nor its insurer could have plausibly believed that Aecon was not seeking any damages

16  attributable to Chinook, either in the underlying case or in this one.  Why else would Aecon sue

17  Chinook in the underlying action and seek a default judgment against it?  Chinook and Hartford

18  have not been misled.

19        Because Aecon does not seek an advantage through the taking of an inconsistent

20  litigation position, application of the doctrine of judicial estoppel is not warranted.  Hartford's

21  motion on this issue is DENIED.

22        To the extent that Hartford's motion raises the tangential issue of whether the Quinault-

23  Aecon settlement is the presumptive measure of damages against the insurers in this action (who

24  the Court has already ruled handled Aecon's tender in bad faith), that issue has not been fully

25  briefed in this motion by all parties and therefore will not be decided at this time.

26

27

ORDER — 5

1        The clerk is directed to send copies of this order to all counsel of record.

2        Dated: August 19th, 2008.

3

4                             Marsha J. Pechman

5                             United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER — 6