1

2

3          UNITED STATES DISTRICT COURT

4          WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE
5

6    AECON BUILDINGS, INC.,                    Case No. C07-832MJP

7                      Plaintiff,             ORDER GRANTING ZURICH'S
                                              MOTION FOR DISCOVERY
8         v.                                  SANCTIONS AND DENYING
                                              ZURICH & HARTFORD'S
9    ZURICH NORTH AMERICA, et al.,            MOTIONS FOR SUMMARY
                                              J U D G M E N T   T O   B A R
10                     Defendants.            SUBROGATION AND PREVENT
                                              DOUBLE RECOVERY
11

12        This matter comes before the Court on Defendant Zurich's motion for discovery

13   sanctions against Plaintiff Aecon (Dkt. No. 125) and Defendants Zurich and Hartford's motions

14   for summary judgment to bar subrogation and prevent double recovery (Dkt. Nos. 138 & 149).

15   Aecon opposes all three motions. (Dkt. Nos. 154 & 183.) Having considered the motions,

16   responses, and replies (Dkt. Nos. 157 & 195), the documents submitted in support and the

17   balance of the record, and having heard oral argument on the matter, the Court GRANTS

18   Zurich's motion for discovery sanctions but DENIES the summary judgment motions.

19                                    **Background**

20        The parties and the Court are familiar with the facts in this case and the Court need not

21   repeat many of them here. In brief, this action arises from claims made by the Quinault Indian

22   Nation ("the Quinault") against Aecon Buildings, Inc. ("Aecon") regarding the construction of a

23   casino and hotel project in Ocean Shores, Washington. Aecon was the general contractor for the

24   project. Chinook Builders, Inc. ("Chinook") and Western Partitions, Inc. ("Western Partitions")

25   were two of the subcontractors Aecon hired to work on the project. Construction commenced in

26   May 1998 and was substantially completed on June 9, 2000. (Dkt. No. 134, Blood Decl., Ex. 1 at

27

     ORDER — 1

ZC 000665.) In April 2004, the Quinault contacted Aecon alleging defects in the building structure that is part of the Quinault project. In May 2005, Aecon sued the subcontractors in King County Superior Court.[1] See Aecon v. Vandermolen Const., Cause No. 05-2-03044-5 SEA. In May 2006, Aecon also tendered the Quinault's claims to Chinook and its insurer, Hartford, and to Western Partitions and its insurer, Zurich, who had added Aecon as an "Additional Insured" under their respective policies.[2] Hartford and Zurich refused to defend or indemnify Aecon. Aecon partially settled the Quinault's claims in early June 2006 for approximately $1.9 million and fully and finally resolved the dispute on January 31, 2007, for $3.75 million after a final mediation proceeding. (Dkt. No. 105-10, 105-14.) The settlement was funded by Aecon's insurers, St. Paul Travelers ("St. Paul") and American Home Assurance Co. ("American Home"), a member of American Insurance Group ("AIG"). (Dkt. No. 139-2, Grace Dep. at 26-27; Dkt. No. 185, Martens Decl. ¶ 2.) St. Paul and American Home both issued comprehensive general liability ("CGL") policies to Aecon; St. Paul and National Union Fire Insurance Co. ("National Union"), another AIG member, issued builders risk policies covering the project.[3]

---

[1]     Aecon did not initially sue Chinook, but amended its complaint on June 7, 2006, to include claims against Chinook. (Dkt. No. 92, Ex. 6.)

[2]     The Court refers to Zurich North America, Zurich American Insurance Company, Northern Insurance Company of New York, and Valiant Insurance Company collectively as "Zurich." The Court refers to Hartford Casualty Insurance Company (referred to by Plaintiff as Hartford Insurance Group) as "Hartford."

[3]     A builders risk policy is first-party insurance that "ordinarily indemnifies a builder or contractor against the loss of, or damage to, a building he or she is in the process of constructing." Russ & Segalla, Couch on Insurance 3D § 1:53 (2008). Builders risk insurance is "a form or type of property insurance, not liability insurance or warranty coverage, that typically covers only projects under construction, renovation, or repair and insures against accidental losses, damages, or destruction of property." 44 C.J.S. Insurance § 3 (2008). The builders risk policies issued here covered Aecon, the Quinault, and all of its subcontractors on the Quinault project. (Dkt. No. 126, Sparling Decl., Ex. C at AEC 05945-47, Ex. D. at AEC 5955.) In contrast, a comprehensive general liability policy is third-party insurance that covers damages that the insured becomes legally obligated to pay because of bodily injury or property damage occurring during the policy period. See Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 525 (2000).

ORDER — 2

(Dkt. No. 185, Martens Decl. ¶ 2.)  Aecon contributed $118,000 of its own funds to the settlement and its defense. (Dkt. no. 139-2, Ex. E, Paul Dep. at 9, 42.)  Aecon initiated this suit in April 2007, claiming that Hartford and Zurich breached their duties to defend and indemnify Aecon, breached their duty to act in good faith, violated the Washington Consumer Protection Act, and acted negligently. (Dkt. No. 3, Compl. at 6-7.)

The parties exchanged initial disclosures in September 2007.  Aecon's disclosure stated in relevant part:

> Aecon is currently aware of the following insurance policies which may satisfy Aecon's claims:
>
> 1.  Hartford Casualty Insurance, policy number 52YECJE0094.
>
> 2.  Valiant Insurance Company and/or Northern Insurance Company of New York and/or Zurich American Insurance Company and/or American Zurich Insurance Company, policy numbers CON 25364234, CON 68132514, CPO 286251100 and CPO 286251102.
>
> Aecon believes there may be additional policies that will provide coverage for Aecon's claims.  To the extent Aecon has copies of these policies, they are available for inspection and copying at the offices of Martens + Associates P.S. Please contact Rose K. McGillis at the number listed below to arrange a mutually convenient time to review the policy.

(Dkt. No. 126, Sparling Decl., Ex. A.)  In May 2008, Aecon served the following response to Zurich's request for production:

> <u>REQUEST FOR PRODUCTION NO. 8</u>: Produce a complete copy of all liability insurance policies issued to plaintiff as a named insured for the period between January 1, 1998 and December 31, 2004 (this request does not include auto liability coverage).
>
> <u>OBJECTION</u>: Aecon objects that the request is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in this case in seeking "all liability insurance policies" when the only policies relevant to this case are the insuring agreements issued by the Zurich and Hartford defendants naming Aecon as an additional insured.
>
> <u>RESPONSE</u>: Aecon will provide copies of responsive liability policies issued to Aecon as the named insured that were effective during the requested period.

(Sparling Decl., Ex. B.)  Aecon does not dispute that it never amended its initial disclosures or its responses to requests for production to disclose the existence of the builders risk policies.

ORDER — 3

Defendants first learned of the builders risk policies at the end of May 2008, when Hartford's counsel reviewed the files of Aecon's expert, Rocco Romero. (Dkt. No. 122, Hayes Decl. ¶¶ 3-6.) After Zurich requested the policies, Aecon at first denied knowledge of the St. Paul policy, (Sparling Decl., Ex. F), but then identified and produced it on June 5, 2008. (Sparling Decl., Ex. G.) Aecon later produced the National Union policy. (See August 5, 2008 Oral Argument.) Apparently, one of the policies and reference to the other were made available in the production in the underlying state court litigation. Zurich argues that Aecon should be sanctioned for not disclosing these builders risk policies with its initial disclosures.

**Discussion**

**I.    Discovery Violations**

As a threshold matter, Aecon argues that the Court should disregard Zurich's sanctions motion because Zurich did not meet and confer with Aecon on the matter before bringing its sanctions motion. Neither the federal nor the local procedural rules require that a party meet and confer prior to bringing a sanctions motion under 26(g). Zurich's failure to meet and confer on this issue is therefore irrelevant.

**A.    Initial Disclosures**

Federal Rule 26(a)(1)(A)(iv) requires that "a party . . . provide to the other parties" initial disclosures, including:

> for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A)(iv). The purpose of the rule includes "enabl[ing] counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Fed. R. Civ. P. 26, 1970 adv. com. notes, subd. b(2) (the former location of current Rule 26(a)(1)(A)(iv)). It is undisputed that Aecon did not produce the builders risk policies, under which it, the Quinault, and all subcontractors were named insureds. Aecon argues that it was not obligated to provide the policies because it is not a

1 defendant in this action and because builders risk policies are not third-party liability policies,

2 but first-party policies. As to the first argument, not only does Aecon offer no case support for

3 its position, the plain language of the rule contradicts Aecon's interpretation. The rule speaks of

4 "a party" having an obligation to turn over documents, not just defendants. Second, the rule

5 requires disclosure of "<u>any</u> insurance agreement" that might cover all or a part of the judgment

6 entered in the case. Fed. R. Civ. P. 26(a)(1)(A)(iv) (emphasis added); <u>see</u> Wright, Miller &

7 Marcus, <u>Federal Prac. & Proc.</u> § 2053 (2008). Although the 1993 Advisory Committee Notes

8 state that the rule "provides that liability insurance policies be made available for inspection and

9 copying," any distinction between third-party policies and first-party policies is absent from the

10 text of the rule itself. Aecon cites <u>Excelsior College v. Frye</u>, 233 F.R.D. 583 (S.D. Cal. 2006), in

11 which that court analyzed the extent of disclosure under Former Rule 26(a)(1)(D) (the

12 predecessor rule to 26(a)(1)(A)(iv)). In that case, the plaintiff contended that defendants should

13 have disclosed an agreement between defendants and their insurer regarding a change in counsel.

14 <u>Excelsior College</u>, 233 F.R.D. at 585. The court concluded that the rule only mandates the

15 disclosure of insurance policies and not all agreements relating to insurance. <u>Id.</u> at 586.

16 <u>Excelsior</u> is therefore inapposite in that it does not discuss whether builders risk, or other types

17 of first-party insurance, fall within the mandatory initial disclosure rule.

18      With no controlling or relevant case law, the Court looks to the text of the rule itself, its

19 purpose, and the general spirit of the discovery rules. Given Rule 26(a)'s language, which does

20 not distinguish between parties or types of insurance, the broad scope of discovery generally, and

21 the fact that these policies could potentially provide coverage to their named insureds, Aecon

22 and the subcontractors, the Court rules that Aecon should have disclosed these builders risk

23 policies in its initial disclosures.

24      **B.**    **Requests for Production**

25      In its Request for Production No. 8, Zurich asked for "a complete copy of all liability

26 insurance policies issued to plaintiff as a named insured for the period between January 1, 1998

27

and December 31, 2004 (this request does not include auto liability coverage)." (Sparling Decl., Ex. B.) Aecon was under no obligation to produce the builders risk policies in response to this request because the request was limited to "liability insurance policies."

Zurich argues that Aecon misled Zurich when it wrote in its objections to the request that "the only policies relevant to this case are the insuring agreements issued by the Zurich and Hartford defendants naming Aecon as an additional insured." (<u>Id.</u>) Zurich should not have been misled as to the facts because of this argument. It was Zurich's obligation to word its requests accurately so as to obtain the type of discovery it needed.

## II. Appropriate Sanction

Aecon violated Federal Rule 26(a)(1)(A)(iv) when it did not disclose the builders risk policies in its initial disclosures. Zurich asks for sanctions under Federal Rule 26(g), which provides:

**Signing Disclosures and Discovery Requests, Responses, and Objections.**

**(1) Signature Required; Effect of Signature.** Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

***

**(3) Sanction for Improper Certification.** If a certification violates this rule without

substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g). Thus, "[t]he Rule allows the court to impose sanctions on the signer of a discovery response when the signing of the response is incomplete, evasive or objectively unreasonable under the circumstances." St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 515 (N.D. Iowa 2000). The Rule is "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Fed. R. Civ. P. 26(g), 1983 adv. com. notes. Courts apply an objective standard to determine whether the rule was violated; the rule requires that the attorney make a reasonable inquiry into the factual basis of his response, request or objection. Id.; see also Or. RSA No. 6, Inc. v. Castle Rock Cellular of Or. Ltd. Partnership, 76 F.3d 1003, 1007 (9th Cir. 1996).

Here, the Court concludes that counsel's certification falls below an objective standard of reasonableness. As discussed above, counsel should have disclosed the policies. And Aecon offers no substantial justification for its failure. Misunderstanding of the law on this issue is not a "substantial justification" for violating the discovery rules. See Musser v. Gentiva Health Servs., 356 F.3d 751, 758 (7th Cir. 2004).

The question, then, is what sanction is appropriate. The Court concludes that Aecon should pay Zurich its attorneys' fees and costs associated with bringing this motion. Zurich should have been able to investigate sooner whether the builders risk policies have any effect on Aecon's suit against Zurich here. But no more severe sanction is warranted for a few reasons: (1) there is no evidence that Aecon acted in bad faith or with intent to conceal the builders risk policies; instead, it appears that Aecon did not believe it was obligated to turn them over in its initial disclosures; (2) Zurich never asked whether any builders risk policies were issued on the

Quinault project;[4] and (3) Zurich has not shown that the existence of the builders risk policies is dispositive as to any issue in this case. It is to this last point that the Court now turns.

## III. Defendants' Motions to Bar Subrogation and Double Recovery

Defendants argue that the builders risk policies substantially impact this case in that they may have indemnified Chinook and Western Partitions, they preclude subrogation rights against the subcontractors, they eliminate any duty to defend, and they may provide contribution for any damages in this suit. Defendants first point to language in the subcontract agreements between Aecon and Chinook and Aecon and Western Partitions for the Quinault Indian Resort casino project, the terms of which are virtually identical and provide as follows:

> 9.2 The Contractor and Subcontractor waive all rights against each other and against the Owner, the Architect, separate contractors and all other subcontractors for damages caused by fire or other perils to the extent covered by property insurance provided under the General Conditions, except such rights as they may have to the proceeds of such insurance.

> 9.3.2 Add the following provision as a new Subparagraph 9.3.2:

> Builders Risk / Wrap-Up Insurance - In the event a Builders Risk or Wrap-Up Insurance Policy is being carried by the General Contractor or the Owner and the Subcontractor makes a claim against this policy, the Subcontractor shall be responsible for the amount of any claim up to the deductible amount.

(Dkt. No. 150, Pujolar Decl., Ex. 1 (Chinook Subcontractor Agreement); Dkt. No. 139-2, Sparling Decl., Ex. A.)

Defendants also point to language in the builders risk policies themselves. The St. Paul policy covered the period from March 1, 1999 to June 3, 1999, and listed BFC Frontier (Aecon),

---

[4] As the Court noted at oral argument, it is curious that these sophisticated insurer defendants never inquired whether any builders risk policies had been purchased for the Quinault project. (August 5, 2008 Oral Argument.) This case is therefore unlike Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp., where the Washington Supreme Court imposed sanctions on a defendant who failed after numerous on-point discovery requests to produce highly relevant documents. 122 Wn.2d 299, 351-52 (1993). Unlike in Fisons, where the Court noted that no request could have been made to defendant that would have produced the "smoking gun" documents, had Zurich asked whether any builders risk policies existed, the Court is convinced Aecon would have identified and produced the at-issue policies. See id. at 354.

Quinault, and "all contractors and subcontractors" as named insureds. (Dkt. No. 139-2, Sparling Decl., Ex. B at AECON2798.)   The St. Paul policy covers the following:

> We'll protect insured property against risks of direct physical loss or damage except as excluded in the Exclusions-Losses We Won't Cover section of this agreement.
>
> ***
>
> We'll cover your financial interest in insured building and installation projects and structures at the location shown in the Coverage Summary [(i.e. the "Quinault Resort Development")]
>
> ***
>
> We'll cover the time the property is at your risk and continue until testing is completed.  Coverage ends when the contract purchaser takes control of the property, when your interest in the property ends, or this policy expires or is cancelled, whichever happens first.

(Id. at AECON2789, 2791.)  The St. Paul policy excludes from coverage the following:

> **Planning, design, materials, maintenance.** We won't cover loss caused by faulty, inadequate or defective:
>
> •   planning, zoning, development, surveying, siting;
> •   design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> •   materials used in repair, construction, renovation or remodeling, or
> •   maintenance.
>
> All of the above apply to part or all of any property on or off the location described in the Coverage Summary.
>
> But if a loss not otherwise excluded results, we'll pay for that resulting loss.

(Id. at AECON2783.)  The second builders risk policy was issued by National Union from June 3, 1999 to June 3, 2000.[5]  The policy covered the Quinault, Aecon, and "subcontractors of every tier." (Id., Ex. C at AEC 05958.)  The policy covers:

> ... Physical Loss of or Damage to:
>
> a) Property in course of construction, reconstruction or repair while at the risk of the Insured and while at the location of the said construction, reconstruction or repair

---

[5]   Defendants assert that this builders risk policy was issued by AIG.  But as Aecon points out, although National Union is a member of AIG, AIG did not issue the policy, National Union did.

operations . . . which are the subject of the contract . . .

The policy explicitly does not cover:

> c) cost of making good faulty or defective workmanship, material, construction or design, but this exclusion shall not apply to damage resulting from such faulty or defective workmanship, material, construction or design

(Id. at AEC 05964.)  The National Union policy also contains a revised subrogation clause:

> If the Company pays a claim under this policy, it will be subrogated, to the extent of such payment, to all the Insured's rights of recovery from other person, organizations and entities . . . .
>
> The Company will have no rights of subrogation against:
>
> A) Any person or entity which is an Insured under the Policy.

(Id. at AEC 05970).  Defendants argue that under the subcontractor agreement and the builders risk policies, Aecon and its insurers, St. Paul and National Union, are barred from pursuing subrogation rights against Zurich and Hartford.[6]

### A.    Aecon is not barred from pursuing claims against the defendant insurers.

#### 1.    Threshold issues

In the subcontractor agreements, Aecon waived all rights against all subcontractors "for damages caused by fire or other perils to the extent covered by property insurance."[7]  Aecon did not agree to waive all rights against Zurich and Hartford.  Aecon's action against Zurich and Hartford is for bad faith breach of the duty to defend and indemnify Aecon, an additional insured under both of their comprehensive general liability policies.  Thus, the subrogation waiver

---

[6]    Black's Law Dictionary defines "subrogation" as "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. . . .  Subrogation denotes the exchange of a third person who has paid a debt in the place of the creditor to whom he has paid it, so that he may exercise against the debtor all the rights which the creditor, if unpaid, might have done." Black's Law Dictionary at 1427 (6th ed. 1990) (internal citations omitted).

[7]    Aecon inexplicably reads into the waiver a requirement that damage because to Aecon's property.  This addition to the contractual language is not supported by other policy language.

ORDER — 10

between Aecon and the subcontractors is inapplicable in this action between Aecon and its subcontractors' insurers. Aecon agreed not to sue its subcontractors for damages covered by property insurance; it did not promise not to sue its own insurers — Zurich and Hartford — for their bad faith conduct.

Defendants point to a Washington Supreme Court case — <u>Touchet Valley Grain Growers v. Opp & Seibold General Constr., Inc.</u>, 119 Wn.2d 334 (1992) — as support for their argument that any effective subrogation waiver between Aecon and the subcontractors also operates as to the subcontractors' insurers. In <u>Touchet</u>, the Court upheld a subrogation waiver between a contractor and owner regarding damage to a constructed building. Without any analysis, the Court also noted that the subrogation waiver protects the contractors' surety, National Surety Corp. <u>Touchet</u>, 119 Wn.2d at 337. <u>Touchet</u> is distinguishable, however, because National Surety Corp. issued a performance bond to the contractor, not a comprehensive general liability policy like those issued by Zurich and Hartford here. Aecon itself was also insured as an additional insured by Zurich and Hartford, an issue not raised in <u>Touchet</u>. <u>Touchet</u> is therefore not controlling here.

### 2. Coverage under the Builders Risk Policies

Even assuming that Aecon's waiver in the subcontractor agreement extended to the insurers Zurich and Hartford, Aecon's subrogation rights are only waived to the extent damages are covered under the builders risk policies.

The St. Paul policy excludes "loss caused by faulty, inadequate or defective . . . workmanship . . . [or] construction." Contrary to Defendants' arguments, the policy excludes the losses experienced here, which include damage resulting from defective construction. Defendants point to the following sentence: "But if a loss not otherwise excluded results, we'll pay for that resulting loss." But that sentence would only be operative here if the losses were not otherwise excluded, which they are. Zurich argued at oral argument that this clause is an "ensuing loss" clause that is an exception to the exclusion, and provides coverage for a loss

resulting from an excluded peril. Zurich cites <u>McDonald v. State Farm Fire & Cas. Co.</u>, 119

Wn.2d 724 (1992) and <u>Wright v. Safeco Ins. Co.</u>, 124 Wn. App. 263 (2004), in support. But in

those cases, the policy exclusions actually stated that they do not exclude any "ensuing loss"

unless the ensuing loss is itself excluded. <u>See</u> <u>McDonald</u>, 119 Wn.2d at 729; <u>Wright</u>, 124 Wn.

App. at 273. The St. Paul policy language does not discuss "ensuing losses," and therefore

<u>McDonald</u> and <u>Wright</u> are not on point. Because the St. Paul policy does not cover the loss here,

Aecon is not barred under its subcontract agreement from pursuing subrogation for any damage

relating to the subcontractors' work.

There are issues of fact regarding whether the National Union policy provides coverage.

That policy excludes the "cost of making good faulty or defective workmanship, material,

construction or design," but does not exclude "<u>damage resulting from such faulty or defective</u>

<u>workmanship, material, construction or design</u>." The damage to the Quinault's casino project

resulted from the subcontractors' defective workmanship. However, the policy only covers

"occurrences happening during the period of this policy" and does not cover "latent defects."

(Dkt. No. 139-2 at AEC 05964, 05966.) Aecon argues, and Defendants do not dispute, that the

Quinault did not contact their construction defect expert, James Paustian, concerning issues at

the resort until 2003. And Defendants also do not dispute that the expert indicated that Chinook

and Western Partitions' work was covered up by the work of others. (<u>See</u> <u>e.g.</u>, Dkt. No. 184-4,

Paustian Dep.) There is therefore an issue of fact regarding whether there was coverage under

the National Union policy for damage caused by Chinook or Western Partitions' work.

It appears that no claims were ever made under either of the builders risk policies, and

that neither of those policies funded the underlying settlement. Aecon offers the declaration of

its counsel, Richard Martens, who states that no payments were ever made under the National

Union builders risk policy. (Dkt. No. 185, Martens Decl. ¶ 2.) Aecon explains that its settlement

was funded under the third-party CGL policies issued by St. Paul and American Home. (<u>Id.</u>) Mr.

Martens also states in his declaration that he has no knowledge of any claim ever being made

under the builders risk policy for either Western Partitions' or Chinooks' work on the Quinault project. (Id.) Defendants offer no evidence or argument suggesting otherwise.

In conclusion, because the subrogation waiver in the subcontractor agreement only applies to the subcontractors, Aecon has not violated that agreement by suing the subcontractors' insurers here. In addition, the St. Paul policy would not provide coverage in this case and there are issues of fact about whether the National Union policy would apply.

**B.    Aecon's insurers are not barred from pursuing claims against Zurich & Hartford.**

Defendants also argue that St. Paul and "AIG" are barred from pursuing subrogation. Under Washington law, subrogation rights do not arise in favor of an insurer against its own insured unless provided for by contract. Sherry v. Financial Indem. Co., 160 Wn.2d 611, 618 (2007). But Aecon's claims are against Zurich and Hartford, not Chinook and Western Partitions (who were insureds under the builder's risk policies). St. Paul and American Home are therefore not making claims against their own insureds. Second, Defendants assume without support that St. Paul and American Home paid the Quinault settlement under their builders risk policies rather than the CGL policies, which allow for subrogation. The evidence in the record indicates that the settlement was funded under St. Paul and American Home's CGL policies. (See Martens Decl. ¶ 2.) Therefore, the rule against subrogating against an insured does not come into play because Western Partitions and Chinook were not insureds under the CGL policies.[8] Third, the provision in National Union's builders risk policy promising not to pursue subrogation against its insureds is inapplicable because National Union is not claiming anything here. Likewise, the revised subrogation clause in the National Union policy provides that if "[t]he Company pays a claim under this policy . . . The Company will have no rights of subrogation against . . . an Insured." (Dkt. No. 139-2 at AEC 05970.) But "the Company" —

---

[8]    Indeed, the American Home CGL policy explicitly provides subrogation rights. (See Dkt. No. 184-3, McGillis Decl., Ex. 2 at AECON2708.)

ORDER — 13

National Union — has no claims to subrogate because it did not pay the Quinault settlement.
Another AIG member company — American Home Assurance Company — paid the settlement
under a different CGL policy. American Home is not barred under its CGL policy from pursuing
claims against the subcontractors or their insurers.

For all these reasons, and particularly because St. Paul and American Home's rights of
subrogation arose from payment under Aecon's CGL policies, St. Paul and American Home are
not barred from pursuing rights of subrogation.[9]

### C.     Aecon is not seeking a double recovery.

Defendants argue that any recovery against them should be limited to the $118,000 that
Aecon itself contributed to the Quinault settlement. But their argument ignores the shortfall
between the $3.75 million settlement and the $2.487 million recovered through the underlying
King County lawsuit against the individual subcontractors. Aecon's insurers, who paid under
the CGL policies, have not been made whole and Aecon itself has not been made whole. This
argument is rejected.

## V.     Duty to Defend

Defendants also argue, in supplemental briefing related to their motions for summary
judgment regarding the alleged breach of the duty to defend, that the builders risk policies
obviated any duty to defend on their parts. (Dkt. No. 119, 196, 121, & 197.) As a preliminary
matter, the Court has already ruled that Defendants acted in bad faith by conducting an
unreasonable investigation of Aecon's tender. (Dkt. No. 208.) And the Court has ruled that
Defendants' summary judgment motions regarding the duty to defend are moot in light of the
Court's bad faith order. (Dkt. No. 212.)   Whether the builders risk policies obviated any duty to
defend on Defendants' part appears to also be moot in light of the Court's bad faith ruling.

---

[9]     Because the Court denies Zurich and Hartford's motions on these issues, the Court
need not consider Aecon's alternative argument that Defendants waived these issues by not pleading
them as affirmative defenses.

Even assuming it is not moot, the existence of the builders risk policies did not eliminate Zurich or Hartford's duty to defend. Defendants point to "other insurance" clauses in their respective policies that eliminate the duty to defend where certain other insurance provides the duty to defend. The Hartford policy provides in relevant part:

**Other Insurance — Primary Additional Insured**

If other valid and collectible insurance is available for a loss we cover under this Business Liability Coverage Form, our obligations are limited as follows:

    **a.**    **Primary Insurance**

        This insurance is primary ..... except when b. applies.

    **b.**    **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"

                           ***

(3) When this insurance is excess, we will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Dkt. No. 92-2, Pujolar Decl. at HART 0046.) The Zurich policy provides:

    4.    Other Insurance

If other valid and collectible insurance is available for a loss we cover under Coverages A, B or D of this Coverage Part, our obligations are limited as follows:

    a.    Primary Insurance

        This insurance is primary except when b. below applies.

    b.    Excess Insurance

        This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

        (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work[.]"

When this insurance is excess, we will have no duty under Coverages A or

B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Dkt. No. 82, Thatcher Decl., Ex. 5 at 13-14.)

Defendants argue that these "other insurance" clauses make clear that they had no duty to defend Aecon here because their policies were excess over the builders risk policies. The Court disagrees. First, the St. Paul policy does not constitute "other valid and collectible insurance . . . available for a loss" covered under the Zurich or Hartford policies because, as explained above, the St. Paul policy excludes from coverage the losses experienced here. And even if the National Union policy provides coverage (which is an unresolved issue of fact), it is undisputed that the National Union policy contains no duty to defend. (See Dkt. No. 126-2 at 18-43.) Thus, if the Zurich and Hartford policies were excess over the National Union policy, they were only excess over a policy that provides no duty to defend.

Contrary to their arguments otherwise, this situation does not obviate Zurich and Hartford's relative duties to defend. Zurich and Hartford suggest that if their policies are excess, and if there is any other insurer who is providing a defense, they are not obligated to do so. This interpretation does not make sense in light of the context of the provision. See Weyerhaeuser Co. v. Comm. Union Ins. Co., 142 Wn.2d 654, 669 (2000) (holding that primary goal is to discern intent of parties and such intent must be discovered from reviewing contract as a whole); Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171 (2005) (holding that policy will be given a practical and reasonable interpretation and will be interpreted in a manner consistent with how the average person purchasing insurance would understand it). The phrase "[w]hen this insurance is excess, we will have no duty to defend any claim or 'suit' that any other insurer has a duty to defend" (and the corollary phrase in Zurich's policy) must be read in the context of the larger provision, which is entitled "Excess Insurance" and which lists those certain types of insurance over which this one is excess. The most reasonable interpretation of this provision is

that Zurich and Hartford are only relieved of their duty to defend where there is other insurance over which they are excess _and_ where that other insurance includes defense duties. At the very least, this provision is ambiguous and should therefore be construed against the drafter. See McDonald v. State Farm Fire and Cas. Co., 119 Wn.2d 724, 733 (1992) ("[I]f an insurance policy's exclusionary language is ambiguous, the legal effect of such ambiguity is to find the exclusionary language ineffective."). Because the National Union policy contains no defense duties, and because the St. Paul policy excludes coverage, Zurich and Hartford were not relieved of their duties to defend Aecon.

## Conclusion

Zurich's motion for discovery sanctions is GRANTED, but Zurich and Hartford's motions for summary judgment to bar subrogation and double recovery are DENIED. Because Defendants' motions on the subrogation and duty to defend issues fail, Defendants have not shown that they have been substantively prejudiced by Aecon's failure to provide notice of the builders risk policies through its initial disclosures. A limited sanction — attorneys' fees and costs related to bringing the sanctions motion — is therefore all that is warranted. Within ten (10) calendar days, Zurich shall provide the Court with a declaration of its fees and costs associated with bringing its sanctions motion. Aecon may respond to the declaration. Any such response is due within seven (7) days of Zurich's papers on the matter and shall not exceed six (6) pages in length.

The clerk is directed to send copies of this order to all counsel of record.

Dated: August 20th, 2008.

Marsha J. Pechman
United States District Judge

ORDER — 17