UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AECON BUILDINGS, INC.,

    Plaintiff,

v.

ZURICH NORTH AMERICA, et al.,

    Defendants.

Case No. C07-832MJP

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT RE: LIMITATION OF AECON'S DAMAGES

This matter comes before the Court on Defendant Zurich's motion for partial summary judgment regarding limitation of Aecon's damages. (Dkt. No. 140.) Aecon opposes the motion. (Dkt. No. 181.) Having considered the motion and response, Zurich's reply (Dkt. No. 194), all documents submitted in support and the balance of the record, and having heard oral argument on the matter, the Court GRANTS IN PART and DENIES IN PART Zurich's motion.

**Background**

The parties and the Court are familiar with the facts in this case and the Court need not repeat many of them here. In brief, this action arises from claims made by the Quinault Indian Nation ("the Quinault") against Aecon Buildings, Inc. ("Aecon") regarding the construction of a casino and hotel project in Ocean Shores, Washington. Aecon was the general contractor for the project. Chinook Builders, Inc. ("Chinook") and Western Partitions, Inc. ("Western Partitions") were two of the subcontractors Aecon hired to work on the project. Construction commenced in May 1998 and was substantially completed on June 9, 2000. (Dkt. No. 134, Blood Decl., Ex. 1 at

ORDER — 1

ZC 000665.) In April 2004, the Quinault contacted Aecon alleging defects in the building structure that is part of the Quinault project. In May 2005, Aecon sued the subcontractors in King County Superior Court.[1] See Aecon v. Vandermolen Const., Cause No. 05-2-03044-5 SEA. In May 2006, Aecon also tendered the Quinault's claims to Chinook and its insurer, Hartford, and to Western Partitions and its insurer, Zurich, who had added Aecon as an "Additional Insured" under their respective policies.[2] Hartford and Zurich refused to defend or indemnify Aecon. Aecon partially settled the Quinault's claims in early June 2006 for approximately $1.9 million and fully and finally resolved the dispute on January 31, 2007, for $3.75 million after a final mediation proceeding. (Dkt. No. 105-10, 105-14.) The settlement was funded by Aecon's insurers, St. Paul Travelers ("St. Paul") and American Home Assurance Co. ("American Home"), a member of American Insurance Group ("AIG") under comprehensive general liability policies. (Dkt. No. 139-2, Grace Dep. at 26-27; Dkt. No. 185, Martens Decl. ¶ 2.) Aecon contributed $118,000 of its own funds to the settlement and its defense. (Dkt. no. 139-2, Ex. E, Paul Dep. at 9, 42.) Aecon initiated this suit in April 2007, claiming that Hartford and Zurich breached their duties to defend and indemnify Aecon, breached their duty to act in good faith, violated the Washington Consumer Protection Act, and acted negligently. (Dkt. No. 3, Compl. at 6-7.)

In September 2007, Aecon moved in the underlying superior court case for a determination of the reasonableness of its settlement with the Quinault. Aecon included with its motion a report from its expert, Rocco Romero. (See Dkt. Nos. 43, 43-5 at 93.) Mr. Romero's report assessed that costs of repair attributable to Western Partitions' work equaled $252,269.

---

[1] Aecon did not initially sue Chinook, but amended its complaint on June 7, 2006, to include claims against Chinook. (Dkt. No. 92, Ex. 6.)

[2] The Court refers to Zurich North America, Zurich American Insurance Company, Northern Insurance Company of New York, and Valiant Insurance Company collectively as "Zurich." The Court refers to Hartford Casualty Insurance Company (referred to by Plaintiff as Hartford Insurance Group) as "Hartford."

ORDER — 2

(Dkt. No. 141, Sparling Decl., Ex. F at 21.) Aecon also submitted the declaration of James Paustian, a construction expert retained by the Quinault to address scope of repair and allocation issues. (Sparling Decl., Ex. G.) Mr. Paustian's declaration included a revised costs estimate he had prepared for the Quinault that estimated repair costs related to Western Partitions' work at $148,442. (Id. at 16.) The superior court denied the motion for a reasonableness determination on procedural grounds, ruling that "the court does not have authority under RCW 4.22.060 to determine the reasonableness of the settlement between Quinault and Aecon because that proceeding was never before this court." (Dkt. No. 43-8.) The superior court denied Aecon's motion for reconsideration on the issue. (Dkt. No. 43-12.)

In March 2008, Aecon filed a motion in this case requesting that this Court determine the reasonableness of the Quinault-Aecon settlement. (Dkt. No. 42.) Included with the materials filed were the materials Aecon had filed in support of its similar motion in superior court. Thus, Aecon included the reports prepared by Mr. Romero and Mr. Paustian. (Dkt. Nos. 43-4, 43-5.) On April 29, the Court denied the motion, concluding that, in light of the superior court's ruling on the matter, collateral estoppel precluded the Court from making a reasonableness determination of the Quinault-Aecon settlement. (Dkt. No. 70.)

Zurich now moves for an order applying the doctrine of judicial estoppel to limit the indemnity portion of Aecon's damages to those amounts the experts estimated in relation to Western Partitions work.[3] More broadly, Zurich requests that the Court limit Aecon's damages to damages arising from Western Partitions' work. Zurich also requests that the Court subtract the amount it already paid Aecon to settle Aecon's claims against Western Partitions in the underlying case. In response, Aecon argues that judicial estoppel is inapplicable and that, regardless, the presumptive measure of damages against Zurich — who has already been found by this Court to have acted in bad faith — is $3.75 million, the Quinault-Aecon settlement

---

[3] Zurich initially asked the Court to limit all of Aecon's damages, but clarified in its reply brief that it only seeks to limit Aecon's indemnity damages.

ORDER — 3

amount.

## Discussion

### I. Summary Judgment Standard

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Catrett, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

### II. Limitations on Aecon's Damages

#### A. Judicial Estoppel

Zurich argues that Aecon should be estopped from seeking damages beyond those assessed by the experts in the underlying case. The Washington Supreme Court recently described the doctrine of judicial estoppel and the elements to be considered in determining whether it should be applied:

> Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. The doctrine seeks to preserve respect for judicial proceedings, and to avoid inconsistency, duplicity, and ... waste of time. . . .
>
> Three core factors guide a trial court's determination of whether to apply the judicial estoppel doctrine: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether judicial acceptance of an inconsistent position in a later

ORDER — 4

proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. These factors are not an exhaustive formula and additional considerations may guide a court's decision. Application of the doctrine may be inappropriate when a party's prior position was based on inadvertence or mistake.

Arkinson v. Ethan Allen, Inc., 160 Wn.2d 535, 538-39 (2007) (internal citations and quotation marks omitted). Other factors to consider include the following:

> (1) [t]he inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; (6) it must appear unjust to one party to permit the other to change.

Markley v. Markley, 31 Wash.2d 605, 614-15 (1948), cited with approval in Arkinson, 160 Wn.2d at 539.

The Court concludes that application of the doctrine is not warranted here. First, in the underlying case, Aecon presented expert testimony regarding the cost of repairing Western Partitions' work. Here, Aecon seeks to use the settlement as a presumptive measure of damages caused by Zurich. These positions are not inconsistent. Second, neither the superior court nor this Court has relied on the experts' opinions because neither court decided whether the underlying settlement was reasonable. Finally, Zurich has not been "misled" to believe that Aecon was only seeking damage amounts identified by the experts in the underlying case. Therefore, Aecon is not judicially estopped from seeking damages from Zurich — whether indemnity damages or other types of damages — that go beyond those identified by Mr. Romero and Mr. Paustian.

**B.  Offset**

Zurich argues that it should be able to offset any damages amount by the $65,000 it paid to Aecon to settle Aecon's claims against Western Partitions in the underlying action. "Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." Morrison

ORDER — 5

v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005) (citing Fed.R.Civ.P. 8(c); Fed.R.Civ.P. 12(b); Fed.R.Civ.P. 12(g)). A party asserting that it deserves an offset must therefore raise the issue in its first responsive pleading because it is an affirmative defense. See Locke v. City of Seattle, 133 Wn. App. 696, 713 (2006). Here, Zurich concedes that it did not raise offset as an affirmative defense in its answer. (Reply at 6; see also Dkt. No. 25.) Zurich argues that, regardless, any damages should be reduced by the $65,000 previously paid to Aecon regardless to prevent a double recovery. Zurich cites Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697 (2000), for support. In that case, the Washington Court of Appeals stated: "It is a basic principle of damages, both tort and contract, that there shall be no double recovery for the same injury." Eagle Point, 102 Wn. App. at 702. But Eagle Point does not discuss whether that principle overrides the procedural rule that affirmative defenses must be pled. Finally, Zurich also cites Fed. R. Civ. P. 15(b), which provides that a party may move to amend its pleadings to conform them to the evidence at trial. See Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir. 1986). Zurich has not cited and the Court is not aware of any case law suggesting that this rule applies before the parties have gone to trial.

Nevertheless, the Court concludes that Aecon would not be prejudiced by Zurich amending its answer now to include the affirmative defense of offset. Aecon was aware of the underlying settlement amount and was not misled to believe that Zurich would not seek an offset here. Zurich is directed to promptly amend its answer to include the affirmative defense of offset.

### C. Contractual Limits

Zurich argues that Aecon should not be able to recover any more in "indemnity" damages (i.e., damages attributable to the costs of repairing faulty subcontractor work) than can be attributed to Zurich's named insured's work on the Quinault project. This premise flows from Aecon's status as an additional insured under the Western Partitions' policies "with respect to covered . . . property damage . . . which results from [Western Partitions'] work under [its]

ORDER — 6

contract [with Aecon]." (Sparling Decl., Ex. A at 8.) Under the plain language of the contract, Aecon is not insured by Western Partitions' insurer for damages arising from other subcontractors' work. Thus, the "indemnity" portion of Aecon's damages must be limited to amounts attributable to Western Partitions' faulty work on the project.

### D. No Joint and Several Liability

Contrary to Aecon's assertion otherwise, the defendant insurers here are not jointly and severally liable for the unrecovered balance of the Quinault-Aecon settlement. Aecon cites Gruol Construction Co. v. Insurance Co. of North America, 11 Wn. App. 632, 637 (1974) and American National Fire Insurance Co. v. B&L Trucking & Construction Co., 134 Wn.2d 413 (1998), for the proposition that the insurers are jointly and severally liable and that they bear the burden of apportionment. Neither of these cases is applicable. Gruol involved an action brought by a contractor against his three insurers for failure to defend against an action brought against him for dry rot damage to a building. 11 Wn. App. at 633. The court of appeals held that the insurers were jointly and severally liable for the damage, which, although continuing over a period of time, constituted a single injury. The court held that "[i]n a dispute between an insured who has sustained damages of a continuing nature, and the insurance carriers providing coverage, the burden of apportionment is on the carriers." Id. at 637. Similarly, in B&L Trucking, the Washington Supreme Court held that in a case involving pollution leaching over time from smelter slag used as ballast, where the policy does not provide for a pro rata allocation, the various insurers who successively provided general liability coverage are jointly and severally liable, even for periods when the insured was not insured by anyone. 134 Wn.2d at 428-29. Aecon presents no legal or factual basis for extending that joint and several liability rule to the two remaining subcontractor insurers here, where, unlike in B&L or Gruol, there is no single injury caused by a single insured, the injury is not ongoing and continuous, and where multiple insurers did not insure the same risk over time. Zurich and Hartford are therefore not jointly and severally liable for the underlying damage here.

ORDER — 7

### E. Settlement as Presumptive Measure of Damages

Aecon argues that the amount of the Quinault-Aecon settlement is the presumptive measure of damages in this case. That is, Aecon asserts that it can collect $3.75 million from the insurers in addition to defense costs, attorneys' fees, CPA statutory damages, and interest.[4] Aecon has just filed a separate motion relating to this issue. (See Dkt. No. 230.) The Court will not rule on whether the settlement is the presumptive measure of damages in the context of Zurich's motion, but will consider the issue separately, either through Aecon's recently filed motion, through motions in limine, and/or through the crafting of appropriate jury instructions.

### Conclusion

The Court GRANTS IN PART and DENIES IN PART Zurich's motion regarding limitation of Aecon's damages. First, Aecon's indemnity damages are not limited to those amounts identified by Rocco Romero and James Paustian. Second, Zurich may amend its answer to include the affirmative defense of offset. Third, Aecon's damages are limited by the contract in which it was a named insured and the insurers are not jointly and severally liable.

---

[4] Aecon has already recovered $2,487,500 from some of the subcontractors, including Western Partitions, in settlements in the underlying suit. (Sparling Decl., Ex. E.) At oral argument, Aecon argued that the "collateral source" rule allows Aecon to seek recovery of the entire settlement amount from Zurich and Hartford without reducing that total by the amounts already recovered from other subcontractors. As explained by the Washington Supreme Court:

> The collateral source rule is an evidentiary principle that enables an injured party to recover compensatory damages from a tortfeasor without regard to payments the injured party received from a source independent of a tortfeaser. Johnson v. Weyerhaeuser Co., 134 Wash.2d 795, 798, 953 P.2d 800 (1998). The rule comes from tort principles as a means of ensuring that a fact finder will not reduce a defendant's liability because the claimant received money from other sources, such as insurance carriers.

Mazon v. Krafchick, 158 Wn.2d 440, 452 (2006). Although the issue has not been fully briefed, and the Court will therefore not rule on the issue now, the Court is dubious that Aecon may use this evidentiary rule to its advantage here, where, the amounts collected were not from Aecon's insurers, but from other tortfeasors (i.e., the other subcontractors).

ORDER — 8

The clerk is directed to send copies of this order to all counsel of record.

Dated: August 29, 2008.

Marsha J. Pechman
United States District Judge

ORDER — 9